IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

```
CLAUDE SLEDGE, III,            )
                               )
            Plaintiff,         )         4:06CV3011
                               )
      v.                       )
                               )
FORREST DALTON, JR., in his    )         MEMORANDUM AND ORDER
individual and official        )
capacities,                    )
                               )
            Defendant.         )
_____)
```

This matter is before the Court on defendant's motion for summary judgment based on qualified immunity (Filing No. 58). Plaintiff seeks relief for alleged violations of his constitutional rights in connection with his arrest on January 20, 2002. Having reviewed the motion, the parties' submissions, and the applicable law, the Court finds that defendant's motion should be denied.

**FACTS**

On January 20, 2002, defendant, Lincoln Police Officer Forrest Dalton ("Dalton"), was performing off-duty security work at a parking garage in Lincoln, Nebraska, along with Officer Robert Butler ("Butler"). Dalton and Butler wore their uniforms and carried firearms. At approximately 1:30 a.m., Dalton observed Sledge enter the lobby of the parking garage and get on an elevator. Dalton claims he recognized Sledge, believing him to be the person who went by the nickname "Candyman." Dalton

also claims he believed there was a warrant for Candyman's arrest.  Dalton claims he and Butler conferred and recalled that Candyman's real name was Darnell McCray.  Dalton had at least one previous contact with McCray, which occurred sometime before January 1998, and he claims he had heard McCray's name in the weeks prior to January 20, 2002, in connection with an outstanding warrant.  Dalton claims he called dispatch and verified that McCray had a warrant and claims that an officer warned him that McCray was known to carry weapons.

     Dalton and Butler went to the exit area of the parking garage, and observed Sledge in the passenger seat of a vehicle driven by Antonio Williams.  Dalton tapped on the window, and Sledge rolled down the tinted window a couple of inches.  Dalton asked Sledge to identify himself.  Sledge refused to identify himself and began yelling, claiming he was being harassed and did not have to produce identification.  At some point, the vehicle begin to roll forward and Dalton ordered the driver to stop. Dalton claims he observed Sledge bring his hand to the right middle section of his body.  Dalton repositioned himself and claims he observed Sledge place a ball-shaped plastic baggie under the floor mat of the vehicle.  Dalton ordered Sledge out of the vehicle.  Sledge initially refused but got out of the vehicle after repeated orders.  Dalton conducted a pat search for weapons and placed Sledge under arrest for failing to comply with his

orders in violation of Lincoln Municipal Code § 9.08.050.[1] Dalton searched the passenger area of the vehicle and retrieved the baggie from under the floor mat.  It contained a substance which he believed was crack cocaine.  He placed Sledge under arrest for possession of a controlled substance, which was later amended to possession of a controlled substance with intent to deliver.  Dalton located Sledge's identification lying on the trunk of the vehicle.  Sledge was transported to jail after the results of a pretest indicated the substance in the baggie was cocaine.

Sledge claims Dalton unlawfully detained him and conducted an unlawful search of his person and the vehicle in which he was a passenger.  Sledge brought this action pursuant to 42 U.S.C. § 1983, suing Dalton in his individual and official capacities.  Dalton moves for summary judgment based on qualified immunity, arguing his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

---

[1] Section 9.08.050 states: It shall be unlawful for any person to intentionally or knowingly refuse to comply with an order of a police officer made in the performance of official duties at the scene of an arrest, accident, or investigation.

Lincoln Municipal Code § 9.08.050.

**STANDARD OF REVIEW**

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003).  The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The proponent need not, however, negate the opponent's claims or defenses.  *Id*. at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts."  *Id*. at 586.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Id*. at 249-50 (citations omitted).

### DISCUSSION

"Qualified immunity guards against the injustice of subjecting public officials to damage liability for the good faith performance of discretionary duties they are legally obligated to undertake, and the danger that the threat of such liability will deter officials from performing with the decisiveness and judgment the public good requires."  *VanHorn v. Nebraska State Racing Commission*, 304 F. Supp. 2d 1151. 1164 (D. Neb. 2004).  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (citing *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

Courts employ a two-step analysis to determine whether a defendant is entitled to qualified immunity.  First, the court considers whether the plaintiff has alleged a deprivation of an

-5-

actual constitutional right.  Second, the court must determine whether reasonable officers would have known their conduct violated a clearly established right at the time of the alleged violation.  If the answer to both of these inquiries is yes, the defendant is not entitled to the defense of qualified immunity; however, if the answer to one or both of the inquiries is no, the defendant is then entitled to qualified immunity.  *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007).  "Immunity ordinarily should be decided by the court long before trial."  *Hunter*, 502 U.S. at 228.

  Here, Sledge claims Dalton violated his Fourth and Fourteenth Amendment rights by unlawfully detaining him, unlawfully searching him, and unlawfully searching the vehicle in which he was a passenger.  Dalton admits that he initially stopped and detained Sledge on the mistaken belief that he was McCray.  Dalton claims his suspicion that Sledge was McCray was based on the fact that he discussed it with Officer Butler, he had the opportunity to observe McCray on a previous occasion, and he had heard McCray's name mentioned in the weeks prior to January 20, 2002, in connection with an outstanding warrant.  On the other hand, Sledge argues that Dalton could not have believed he was McCray because it was only a brief sighting in the parking garage, Dalton had only one contact with McCray sometime before January 1998, and did not remember the details of the encounter, and Sledge and McCray do not have similar appearances.  Both

-6-

McCray and Sledge are African-American.  McCray is allegedly 6"5" and 250 pounds with a lighter complexion than Sledge (Filing No. 66 at 79-80 (Ex. 1.2)).  Sledge is allegedly 6'1" and 160 pounds with a darker complexion than McCray (Filing No. 66 at 81-83 (Ex. 1.3)).  Sledge also disputes whether Dalton called dispatch to verify that there was a warrant for McCray because there is no evidence of this other than McCray's testimony.

The Court finds there are material issues of fact precluding summary judgment on Sledge's unlawful detention claim. The only evidence before the Court of the encounter between Dalton and Sledge is Dalton's deposition testimony and Sledge's affidavit.  Their accounts of the initial encounter contain factual differences which are material to the Court's determination, and there is a material issue of fact whether Dalton had reasonable suspicion to stop Sledge.  Dalton's entitlement to qualified immunity on the remaining claims of unlawful search of Sledge's person and the vehicle in which he was a passenger is dependent on resolution of the unlawful detention claim; therefore, summary judgment based on qualified immunity will be denied on these claims as well.  Accordingly,

IT IS ORDERED that defendant's motion for summary judgment based on qualified immunity (Filing No. 58) is denied.

DATED this 27th day of March, 2007.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court